# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

    v.          Civil Action No. 09-01508 (BAH)

U.S. DEPARTMENT OF THE TREASURY,

    Defendant.

## MEMORANDUM OPINION

    Plaintiff Judicial Watch, Inc. brought this case to compel the U.S. Department of the Treasury to respond to a Freedom of Information Act ("FOIA") request. The plaintiff's FOIA request sought documents related to the Treasury's Troubled Asset Relief Program ("TARP") and to the Treasury's investments, through that program, in a Massachusetts bank that the plaintiff asserts is favored by members of Congress. The FOIA generally requires the disclosure, upon request, of records held by a federal government agency unless the records are protected from disclosure under one of nine FOIA exemptions. In this case, the Treasury Department has produced several hundred pages of documents to the plaintiff and has also withheld, in whole or in part, other documents that the Treasury claims fall under one or more of the FOIA exemptions. The plaintiff claims that the Treasury improperly withheld or redacted 13 of these documents because, according to the plaintiff, these 13 documents are not subject to any FOIA exemptions. The Treasury has moved for summary judgment seeking a determination that it has fulfilled its obligations to respond to the plaintiff's FOIA request and that the 13 documents in question properly fall under FOIA exemptions. For the reasons explained below, the Court

grants summary judgment to the Treasury for all disputed documents except for three withheld

documents that contain some reasonably segregable material that should have been released.[1]

## I.     BACKGROUND

On January 23, 2009, Plaintiff Judicial Watch, Inc. submitted a FOIA request to the U.S.

Department of the Treasury seeking documents related to TARP, a federal program designed to

assist troubled banks.  Compl. ¶ 5.  The plaintiff is a private foundation that regularly serves

requests on government entities under the FOIA, 5 U.S.C. § 552, and shares its findings with the

public.  Compl. ¶ 3.

Congress created TARP as part of the Emergency Economic Stabilization Act ("EESA"),

which was enacted on October 3, 2008 during a time of great financial turmoil.  Emergency

Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (2008).  The EESA

established the Office of Financial Stability ("OFS") within the Treasury, and authorized OFS to

implement TARP.  *See* 122 Stat. at 3767.  Congress's intention in creating TARP included

stabilizing the financial markets quickly and effectively, bolstering the housing market by

avoiding preventable foreclosures and supporting mortgage finance, and protecting taxpayers.

*See* 122 Stat. at 3765-66, 3770.

The Capital Purchase Program ("CPP") was one of the Treasury's largest TARP

initiatives.  Under the CPP, a qualified financial institution could apply for the opportunity to

have the Treasury purchase the institution's securities.  Def.'s Mem. in Supp. of Mot. for Summ.

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case arises under a federal law – the Freedom of Information Act – and  "the district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Jurisdiction is also established by the FOIA statute itself, which provides that "[o]n complaint, the district court of the United States. . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  Section 552(a)(4)(B) also makes venue proper in this District.  See *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) (citing 5 U.S.C. § 552(a)(4)(B) for the proposition that Congress expressly intended "to render the District of Columbia an all-purpose forum in FOIA cases.").

J. ("Def.'s Mem.") at 3.  If the Treasury approved the application, the resulting government investment in the financial institution's securities would provide the institution with capital, increasing its stability.  *Id.*  The purpose of the CPP was to enhance market confidence in U.S. banks and to increase the banks' capacity to lend to businesses and consumers by strengthening their capital bases with the government's investment.  *Id.*

Financial institutions interested in applying for CPP investments were required to consult with one of four primary federal regulators—the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Commission ("FDIC"), the Office of the Comptroller of the Currency ("OCC"), or the Office of Thrift Supervision.  *Id.* at 4.  After this consultation, financial institutions could submit an application to that same primary regulator for evaluation. *Id.*  Once the regulator reviewed an institution's application, it would either send the application to a council of regulators for further review, or send the application along with its recommendation directly to the Treasury's OFS.  *Id.*  After OFS received the application with the regulator's recommendation, the Treasury reviewed it and decided whether or not to make the purchase of the institution's securities.  *Id.*

In accordance with the CPP application process described above, OneUnited Bank based in Boston, Massachusetts ("OneUnited") submitted a CPP application to the FDIC, its primary federal banking regulator.  *Id.* at 5.  The FDIC reviewed OneUnited's application and submitted it to the Treasury with FDIC's recommendation for further review.  *Id.*  On December 19, 2008, the Treasury purchased $12,063,000 of OneUnited's preferred stock pursuant to the CPP.  *Id.*

A little over a month later, on January 23, 2009, the plaintiff submitted a FOIA request to the Treasury that, in its entirety, sought the following documents:

> a.   Any and all records concerning evaluation procedures for federal banking
>      agencies and the Treasury Department to distribute/award TARP Funds (Tranche

Report to Congress for the Period Through 5 November 14, 2008 states on page 2 "Treasury has worked with the Federal banking agencies to establish streamlined evaluation procedures;" disclosure should include a copy of evaluation procedures produced to federal banking agencies, any correspondence between the Treasury and any federal banking agencies concerning such procedures, memos, briefing materials, etc).

b.   Correspondence with Congressman Barney Frank or any representative of his Office concerning TARP Funds and/or any bank in Massachusetts.

c.   Any and all records concerning OneUnited Bank in Boston, Massachusetts (including correspondence from any lobbyist, correspondence from any other government agency, correspondence with any elected government official, correspondence directly with the Bank, the Bank's application for TARP funds, etc).

Compl. ¶ 5.

The plaintiff's interest in the requested documents arises from its concern about the "possible misuse of taxpayer money from [TARP] to assist a financial institution favored by members of Congress, OneUnited Bank." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") at 1. While the plaintiff states that "it is possible that no misconduct actually occurred in this matter," the plaintiff asserts that "at least two politicians interceded on OneUnited's behalf in an effort to secure TARP funds for" OneUnited – Representative Barney Frank of Massachusetts and Representative Maxine Waters of California. *Id.* at 1-3. According to the plaintiff, this factual background suggests that "as much information as possible about the government's decision to distribute TARP funds to OneUnited Bank should be made available for public scrutiny." *Id.* at 4.

The plaintiff brought this case on August 11, 2009 to compel the defendant's response to its FOIA request. *See* Compl. To date, the defendant has made four productions of documents to the plaintiff in response to the request: 428 pages on December 7, 2009; 168 pages on December 17, 2009; 12 pages on February 28, 2010; and 44 pages on September 13, 2010.

Def.'s Mem. at 7-8; Def.'s Mem. in Supp. of Def.'s Supplemental Mot. for Summ. J. ("Def.'s Suppl. Mem.") at 2.

In total, the defendant produced 652 pages and redacted or withheld 209 pages from its document productions based on various statutory exemptions to FOIA's disclosure requirements. Def.'s Mem. at 7-8; Def.'s Suppl. Mem. at 1.  The plaintiff challenges the defendant's withholding or redaction of 13 of these documents based on three of the nine statutory FOIA exemptions: Exemption 4, which protects privileged and confidential trade secrets and commercial or financial information; Exemption 5, which protects documents that would not ordinarily be available through discovery to a litigant in a civil suit with the agency; and Exemption 8, which protects certain matters related to the regulation of financial institutions. *See* Pl.'s Mem. at 5; Pl.'s Opp'n to Def.'s Suppl. Mot. for Summ. J. ("Pl.'s Suppl. Mem.") at 5; 5 U.S.C. §§ 552(b)(4), (b)(5), and (b)(8).

The 13 documents, withheld in whole or in part by the Treasury based upon exemptions disputed by the plaintiff (the "Disputed Documents"), are described below:[2]

a.   Five internal Treasury staff memoranda, which were redacted in part:

1)   "TARP Capital Purchase Team Analysis Regarding OneUnited's Application," November 2008, Bates number 71;

2)   "CPP Status Memo," December 3, 2008, Bates number 117;

3)   Email attachment regarding presenting OneUnited's application to the OFS Investment Committee, November 14, 2008, Bates numbers 275-276;

4)   Memorandum regarding summary information related to OneUnited, October 17, 2008, Bates numbers 815-817;

5)   Memorandum summarizing background and supervisory information related to OneUnited, September 10, 2008, Bates numbers 819-821;

[2] The Court will refer to the documents by their Bates stamp numbers, omitting any initial zeroes.  Some documents contain several pages.  For ease of reference, the Court will refer to each multi-page document as a single document.

b.   Three email strings, which were redacted in part:

    6)   Email strings among Treasury staff regarding Treasury meeting with a minority bankers association, October 17, 2008, Bates numbers 296-297 and 466;

    7)   Email strings among Treasury staff regarding timing for consideration of OneUnited's application, November 20, 2008, Bates numbers 475-477;

    8)   Email string among Treasury staff and partially between Treasury staff and Treasury legal department regarding response to press inquiries, March 12, 2009, Bates numbers 530-533;

c.   Three sets of meeting minutes, which were withheld in full:

    9)   OFS Investment Committee Meeting Minutes, November 13, 2008, Bates numbers 537-538;

    10) OFS Investment Committee Meeting Minutes, November 19, 2008, Bates numbers 539-540;

    11) Draft OFS Investment Committee Meeting Minutes, November 25, 2008, Bates numbers 541-542;

d.   Two documents received from other agencies, which were withheld in full:

    12) FDIC recommendation, November 2008: five-page document prepared by the Federal Deposit Insurance Commission (no Bates number);

    13) OCC Evaluation Form, November 2008: one page evaluation form from the Office of the Comptroller of the Currency (no Bates number).

*Vaughn* Index; Suppl. *Vaughn* Index.

The defendant asserts that three FOIA exemptions apply as follows to these Disputed

Documents:

1.   **Exemption 5** (documents that would not be available in civil discovery):  All Disputed Documents.

2.   **Exemption 4** (privileged and confidential commercial information): Disputed Documents 1, 2, 4, 5, and 9-13, namely: TARP Capital Purchase Team Analysis Regarding OneUnited's Application," Bates number 71; "CPP Status Memo," Bates number 117; the three sets of meeting minutes (OFS Investment Committee meeting minutes, Bates numbers 537-538, 539-540, and 541-542); Memorandum regarding

summary information related to OneUnited, Bates numbers 815-817; Memorandum summarizing background and supervisory information related to OneUnited, Bates numbers 819-821; and the two documents received from other agencies (the FDIC recommendation and the OCC evaluation).

3. **Exemption 8** (certain matters related to the regulation of financial institutions): Disputed Documents 4-6 and 9-13, namely: Email strings regarding Treasury meeting with a minority bankers association, Bates numbers 296-297 and 466; the three sets of meeting minutes (OFS Investment Committee meeting minutes, Bates numbers 537-538, 539-540, and 541-542); Memorandum regarding summary information related to OneUnited, Bates numbers 815-817; Memorandum summarizing background and supervisory information related to OneUnited, Bates numbers 819-821; and the two documents received from other agencies (the FDIC recommendation and the OCC evaluation).

Def.'s Mem. at 9; Def.'s Suppl. Mem. at 2.

On June 14, 2010 and January 25, 2011, the defendant moved for summary judgment on the Disputed Documents pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3] Def.'s Mem. at 2; Def.'s Suppl. Mem. at 2. Along with its summary judgment filings, the defendant has provided five declarations and two *Vaughn* indices that describe the basis for its assertion that each of the disputed documents is covered by an exemption. *See* Def.'s Mem., Exhibit A ("*Vaughn* Index"); Declaration of Joseph J. Samarias, dated June 14, 2010 ("Samarias Decl."); Declaration of Michelle Borzillo, dated June 8, 2010 ("Borzillo Decl."); Declaration of Frank D. Vance, Jr., dated June 11, 2010 ("Vance Decl."); Declaration of Robert Patrick Cooper, dated June 1, 2010 ("Cooper Decl."); Def.'s Suppl. Mem., Exhibit A ("Suppl. *Vaughn* Index"); Second Declaration of Joseph J. Samarias, dated January 25, 2011 ("Second Samarias Decl.").

---

[3] The defendant filed a motion for summary judgment pursuant to its first three document productions on June 14, 2010. *See* Def.'s Mot. for Summ. J. at 1. Subsequently, the defendant discovered additional relevant documents and made an additional production with some withholdings. The defendant filed a supplemental motion for summary judgment regarding the additional withholdings on January 25, 2011. *See* Def.'s Suppl. Mot. for Summ J. at 1; Def.'s Suppl. Mem. at 1.

On June 29, 2011, the Court directed the defendant to provide unredacted versions of the

Disputed Documents for *in camera* inspection.  The defendant submitted the documents for *in

camera* inspection on July 6, 2011.

The plaintiff does not challenge the adequacy of the defendant's search for documents

responsive to its request.  Pl.'s Statement of Material Facts, ECF No. 17, ¶ 23.  The sole issue

before the Court is whether the defendant properly redacted or withheld the Disputed Documents

under FOIA Exemptions 5, 4, and 8.

## II.      DISCUSSION

### A.      Standard of Review

Congress enacted FOIA to promote transparency across the government.  *See* 5 U.S.C. §

552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, No. 09-02064, 2011

WL 1326928, at *3 (D.D.C. April 7, 2011) (citing *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir.

1984).  The Supreme Court has explained that FOIA is "a means for citizens to know 'what their

Government is up to.'  This phrase should not be dismissed as a convenient formalism.  It

defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*,

541 U.S. 157, 171-172 (2004) (internal quotations and citations omitted). "The basic purpose of

FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed

to check against corruption and to hold the governors accountable to the governed." *NLRB v.

Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The strong interest in transparency must

be tempered, however, by the "legitimate governmental and private interests [that] could be

harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of

Defense*, 601 F.3d 557, 559 (D.C. Cir. 2010); *see also Critical Mass Energy Project v. Nuclear

Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992).  Accordingly, Congress included nine

exemptions permitting agencies to withhold information from FOIA disclosure.  5 U.S.C. §

552(b).  "These exemptions are explicitly made exclusive, and must be narrowly construed."

*Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (internal quotations and citations

omitted) (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)); *see also Pub. Citizen, Inc. v. Office

of Management and Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact."  Fed. R. Civ. P. 56.  At the summary judgment stage, all justifiable inferences must be

drawn in favor of the non-moving party to the extent supportable by the record.  *Scott v. Harris*,

550 U.S. 372, 380 n.8 (2007); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)

(per curiam).  In reviewing motions for summary judgment regarding FOIA exemptions, the

district court must conduct a *de novo* review of the record. 5 U.S.C. § 552(a)(4)(B).

The government agency has the burden to demonstrate that the documents requested are

exempt from disclosure.  *See Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57

(D.C. Cir. 2003); *Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 29 (D.D.C. 2010).  Because the

agency is in the unique position of "[p]ossessing both the burden of proof and all the evidence,"

the agency must provide the Court and the challenging party "a measure of access without

exposing the withheld information," which would "compromis[e] its original withholdings."

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).  Therefore, "[t]o enable the

Court to determine whether documents properly were withheld, the agency must provide a

detailed description of the information withheld through the submission of a so-called 'Vaughn

Index,' sufficiently detailed affidavits or declarations, or both."  *Hussain v. U.S. Dep't of

Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009).   The *Vaughn* Index:

> [F]orces the government to analyze carefully any material withheld, [ ] enables the trial
> court to fulfill its duty of ruling on the applicability of the exemption, and [ ] enables the

adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Judicial Watch, Inc. v. FDA*, 449 F.3d at 146.

A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record, which is located, was either produced to the plaintiff or is exempt from disclosure. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on relatively detailed, non-conclusory declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). In the FOIA context, summary judgment is justified if the affidavits or other documents describe the documents and "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). *See also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998). A court reviewing an agency's motion for summary judgment under FOIA is required to view the facts in the light most favorable to the FOIA requester. *See Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 514 (D.C. Cir. 1996); *Chaplin v. Stewart*, No. 10-0518, 2011 WL 65742, *3 (D.D.C. Jan. 10, 2011). An agency's declarations, however, are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverabilility of other documents." *Negley v. FBI*, 169 Fed. App'x 591, 594 (D.C. Cir. 2006) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (citation and internal quotation marks omitted); *Holt v. Dep't of Justice*, 734 F. Supp. 2d 28, 35-36 (D.D.C. 2010); *see Matter of Wade*,

969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the

government's submissions regarding reasons for withholding the documents should not be

questioned.") (citation omitted).

### B.      Analysis

The defendant has invoked Exemptions 4, 5, and 8 to withhold certain Disputed

Documents in their entirety and partially to redact others.  *See generally Vaughn* Index.  Based

on a review of the defendant's legal memoranda, declarations, and *in camera* submissions, the

Court concludes that Treasury's withholdings and redactions are proper, except that Documents

9-11, Bates numbers 537-538, 539-540, and 541-542, contain some reasonably segregable

material that should have been released.

### 1.   Analysis of Exemption 5 Claims

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5

U.S.C. § 552(b)(5).  Exemption 5 provides the agency with the same privilege protections it

would ordinarily have in civil discovery.  If a document requested through FOIA "would be

'routinely' or 'normally' disclosed [in civil discovery] upon a showing of relevance," it must

also be disclosed under FOIA; conversely, information that is normally protected in discovery is

protected under Exemption 5.  *Burka*, 87 F.3d at 516 (citing *FTC v. Grolier*, 462 U.S. 19, 26

(1983)).  Put another way, Exemption 5 covers "those documents, and only those documents,

normally privileged in the civil discovery context."  *Loving v. Dep't of Defense*, 550 F.3d 32, 37

(D.C. Cir. 2008) (citing *Sears*, 421 U.S. at 149).  The two Exemption 5 privileges at issue in this

case are the deliberative process privilege and the attorney-client privilege.

i.      **Deliberative Process Privilege Was Properly Claimed Over All Documents.**

The defendant asserts that all of the Disputed Documents were properly withheld or redacted pursuant to the deliberative process privilege.  *See* Samarias Decl. ¶¶ 34-36; Second Samarias Decl. ¶ 6.  The plaintiff disputes that this privilege was properly applied to several of the Disputed Documents and asserts three arguments for disclosure: (1) the plaintiff's compelling need for the documents trumps the defendant's interests; (2) the defendant improperly withheld factual materials, which the plaintiff asserts are not covered by the privilege; and (3) the defendant did not properly identify the decision-making processes that would be harmed by each document's release, which the plaintiff contends is necessary to assert the privilege.  *See* Pl.'s Mem. at 11-13; Pl.'s Opp'n to Def.'s Suppl. Mot. for Summ. J. ("Pl.'s Suppl. Mem.") at 9-12. Each of these arguments is addressed below.

The common-law "privilege regarding the government's deliberative process" is one of the privileges incorporated into Exemption 5.  *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005) (citing *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1496 (D.C. Cir. 1984)).  The inclusion of the deliberative process privilege in the FOIA statute "reflect[s] the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible."  *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997).  The deliberative process privilege is intended to protect "the decision making processes of government agencies."  *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (citing *Sears,* 421 U.S. at 150).  The privilege's ultimate purpose is "to prevent injury to the quality of agency decisions."  *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d at 113.

To come within the privilege, therefore, a document must be both "pre-decisional" and "deliberative." *See Judicial Watch, Inc. v. FDA*, 449 F.3d at 151.  A document is pre-decisional if it was generated before agency policy was adopted and deliberative if it "reflects the give and take of the consultative process."  *Id.*

### a.   Deliberative process privilege is not a qualified privilege in the FOIA context.

The plaintiff attempts to argue that the deliberative process privilege is qualified and can be overcome by a showing of need.  Pl.'s Mem. at 10.  Since Exemption 5 shields those documents that are not routinely available in civil discovery, however, this understanding of the deliberative process privilege is incorrect in the FOIA context.  *See Sears*, 421 U.S. at 149 n.16 ("[I]t is not sensible to construe [FOIA] to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. . .  Exemption 5 was intended to permit disclosure of those intra-agency memoranda which would 'routinely be disclosed' in private litigation. . . .").  While the deliberative process privilege is generally a qualified privilege in civil litigation against the government, documents subject to qualified privileges for which a plaintiff must make a showing of need are not documents that would "routinely be disclosed" in private litigation. Thus, they are shielded from disclosure under Exemption 5.  Indeed, the D.C. Circuit case the plaintiff cites for its contention that the deliberative process privilege is a qualified privilege makes explicit that the privilege is *not* qualified in the FOIA context.  *See In re Sealed Case*, 121 F.3d 729, 738 n.5 (D.C. Cir. 1997) ("This [qualified privilege] characteristic is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure.") (citing *Sears*, 421 U.S. at 149 n.16).

Although not addressed by the parties, the Court has reviewed a 2004 D.C. Circuit case that might suggest the deliberative process privilege is qualified in the FOIA context.  In *Judicial Watch, Inc. v. Dep't of Justice*, in a discussion of FOIA Exemption 5, the D.C. Circuit stated that "[t]he deliberative process privilege . . . is qualified and can be overcome by a sufficient showing of need."  365 F.3d at 1113 (citing *In re Sealed Case*, 121 F.3d at 737).  Despite this remark, the Court finds that this case does not disturb the conclusion that the deliberative process privilege is not qualified in the FOIA context.  *In re Sealed Case* is the sole authority that *Judicial Watch, Inc. v. Dep't of Justice* cited for the proposition that the privilege is qualified, and, as noted above, *In re Sealed Case* stated that "[t]his characteristic is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."  121 F.3d at 737 n.5.  The Court in *Judicial Watch, Inc. v. Dep't of Justice* did not distinguish these comments from *In re Sealed Case* or otherwise elaborate upon the distinction between qualified privileges in general civil litigation and the treatment of such privileges under FOIA Exemption 5.  This lack of commentary is not surprising since the ruling in *Judicial Watch, Inc. v. Dep't of Justice* did not turn on whether or not the privilege was qualified, and the Circuit's statement on that issue in that case are therefore best regarded as background dicta.

Courts in this Circuit have consistently treated deliberative process privilege under FOIA Exemption 5 as an unqualified privilege.  *See McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 n.8 (D.D.C. 2010) (rejecting argument that deliberative process privilege is qualified in the FOIA context because "it is well-established that '[a] court's decision in a discovery case may rest in part on an assessment of the particularized need of the party seeking discovery, but in a FOIA suit, the court does not consider the needs of the requestor.'") (quoting *EPA v. Mink*, 410 U.S.

73, 86 (1973) (superseded by statute on other grounds)).  Indeed, analyzing deliberative process

privilege claims without regard to a FOIA plaintiff's particular assertions of need is most

consistent with the traditional understanding that Exemption 5 privileges are not treated as

qualified because "Exemption 5 was intended to permit disclosure of those intra-agency

memoranda which would 'routinely be disclosed' in private litigation."  *Sears*, 421 U.S. at 149.

Absent any direct clarification on this issue from the D.C. Circuit, the Court will continue to treat

deliberative process privilege as unqualified in the FOIA context.

> **b.  Deliberative process privilege covers factual material presented in a form that would reveal agency deliberations.**

The plaintiff challenges six documents as containing factual material that should not have

been redacted or withheld pursuant to the deliberative process privilege: the "TARP Capital

Purchase Analysis" memo, Bates number 71; the "CPP Status Memo," Bates number 117; pages

819-820 of the "Memorandum summarizing background and supervisory information related to

OneUnited," Bates numbers 819-821; and the three sets of meeting minutes, Bates numbers 537-

538, 539-540, and 541-542.  Pl.'s Mem. at 11, 13; Pl.'s Suppl. Mem. at 11.  The plaintiff argues

that the agency has a duty to disclose any reasonably segregable, responsive factual information,

and that the agency has failed to demonstrate that disclosure of the factual information redacted

or withheld in the documents mentioned above would reveal any agency deliberations.  *See* Pl.'s

Mem. at 11.

### i.  *The Internal Treasury Memoranda*

Three of these documents are internal Treasury memoranda.  The first document, "TARP

Capital Purchase Analysis" memo, Bates number 71, is described as a memorandum prepared by

Treasury staff to ensure incoming applications are reviewed consistent with CPP processes and

was used by staff in presenting applications to the OFS Investment Committee. *Vaughn* Index at

1.  The redacted portions contain an internal analysis of OneUnited's application.  *Id.*  The second document, "CPP Status Memo," Bates number 117, is described as an internal Treasury summary of steps taken regarding OneUnited's CPP application.  *Id.*  It was prepared by staff to ensure OneUnited's application followed consistent CPP procedures.  The third document, "Memorandum summarizing background and supervisory information related to OneUnited," Bates numbers 819-821, is described as an internal memorandum prepared by Treasury staff to assist internal deliberations.  The redacted portions contain the author's internal analysis of background and supervisory information on OneUnited and set forth related policy issues for consideration.  Suppl. Vaughn Index at 1.

In withholding a responsive record under one of FOIA's enumerated exemptions, an agency must nevertheless disclose any non-exempt information that is "reasonably segregable" from the responsive record. 5 U.S.C. § 552(b).  An agency need not, for instance, "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Schoenman v. FBI*, No. 04-02202, 2011 U.S. Dist. LEXIS 12560, at *76 (D.D.C. Feb. 9, 2011) (citations omitted).  To discharge its burden before the district court, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Id.* (citations omitted).

The *Vaughn* Index indicates that all reasonably segregable portions of the three redacted internal memoranda documents have been released, while portions of the memoranda – including factual material – have been redacted pursuant to the deliberative process privilege.  *Vaughn* Index at 1; Suppl. *Vaughn* Index at 1.  The Samarias declaration also indicates that the defendant performed a "document-by-document review" and that non-exempt information in the withheld

or redacted materials "is so inextricably intertwined with the exempt information that any further separation of exempt information beyond the separation that Treasury has already done would produce only incomplete, fragmented, unintelligible sentences and phrases that are devoid of any meaning."  Samarias Decl. ¶¶ 52-53.  The plaintiff contends that the defendant failed to demonstrate that disclosure of the redacted factual material will reveal the Treasury's internal deliberations regarding OneUnited's CPP application.  *See* Pl.'s Mem. at 11; Pl.'s Suppl. Mem. at 12.

Although purely factual information is generally not protected under the deliberative process privilege, such information can be withheld when "the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *In re Sealed Case*, 121 F.3d at 737.  Such information is protected in order to avoid allowing "the reader to probe too deeply into the thought processes of the drafters" and thus to avoid "a chilling effect on communication between agency employees regarding similar projects and the future."  *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007).  Thus, factual material is protected under the deliberative process privilege when disclosure would "expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Quarles v. Dep't of the Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (citations omitted).  Such material is protected because "Exemption 5 was intended to protect not simply deliberative material, but also the deliberative process of agencies."  *Montrose Chemical Corp. of Ca. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974).

Since the decision to include or exclude certain factual information from an analytical memorandum is an important part of the deliberative process, this Circuit has found factual

information highlighted in internal analytical memoranda to be protected under the deliberative

process privilege.  *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (finding

factual information in a report protected when that "factual material was assembled through an

exercise of judgment in extracting pertinent material from a vast number of documents for the

benefit of an official called upon to take discretionary action."); *Judicial Watch, Inc. v. U.S.

Postal Serv.*, 297 F. Supp. 2d 252, 262 (D.D.C. 2004) (noting that documents could arrange facts

in such a way that they reveal the policy judgments of the author and thus an agency's

deliberative process).  In addition, to the extent that the Treasury has redacted information

revealing the dates that certain actions in the deliberative process were (or were not) undertaken,

the D.C. Circuit recognized in *Wolfe v. Dep't of Health and Human Services* that releasing

information about the timing of the deliberative process would "disclose the recommended

outcome of the consultative process at each stage of that process" and that such information is

therefore properly protected under the deliberative process privilege. 839 F.2d 768, 775 (D.C.

Cir. 1988) (en banc).   As discussed *supra*, the Treasury undertook a careful document-by-

document analysis to ensure that only exempt material was withheld or redacted from the

document production.  *See* Samarias Decl. ¶¶ 52-53.  The Court finds that the "TARP Capital

Purchase Analysis" memo, Bates number 71, the "CPP Status Memo," Bates number 117, and

pages 819-820 of the "Memorandum summarizing background and supervisory information

related to OneUnited," Bates numbers 819-821, all reflect the authors' deliberative process in

selecting factual material to be disclosed in the memoranda. Thus, all were properly redacted

under the deliberative process privilege.

## ii.   *The OFS Meeting Minutes*

The plaintiff also alleges the defendant improperly withheld factual information in the

three sets of OFS Investment Committee minutes, Bates numbers 537-538, 539-540, and 541-

542.  *See* Pl.'s Mem. at 13.  These minutes were withheld in full.  *Vaughn* Index at 4-5; Samarias

Decl. ¶ 34.  The plaintiff contends that the minutes "merely summarize facts that were discussed

at meetings, as opposed to revealing actual deliberations" and thus at least some portions of the

meeting minutes should be releasable.  Pl.'s Mem. at 13.

The three sets of OFS Investment Committee meeting minutes present a different

situation from the internal memoranda since they were withheld in full.  The sections of the

minutes that summarize the discussions at the meetings were properly withheld.  The defendant

has made clear that the meetings consisted of deliberations of the OFS Investment Committee

regarding pending CPP applications and did not consist of mere recitations of facts.  *See Vaughn*

Index at 4-6; Samarias Decl. ¶ 34.  Those sections of the minutes that refer to discussions

regarding the CPP applications of financial institutions other than OneUnited were properly

withheld as not responsive to the plaintiff's FOIA request, which sought information regarding

OneUnited's application.  The Samarias Declaration specifically describes the parts of the

minutes that refer to OneUnited as documentations of "internal Treasury deliberations regarding

OneUnited's submitted, but not yet approved, CPP application." Samarias Decl. ¶ 34.  The

Court's *in camera* inspection of the meeting minutes confirms the description in the Samarias

Declaration.  The minutes do not "merely summarize facts that were discussed at meetings, as

opposed to revealing actual deliberations," as the plaintiff contends.  Pl.'s Mem. at 13.  Because

releasing the portions of the minutes that summarize the meeting discussions would reveal the

internal deliberative process of the OFS Investment Committee, these sections of the minutes were properly withheld.

Following *in camera* inspection, however, the Court finds that the defendants improperly withheld reasonably segregable information in the minutes—namely, the headers at the top of each set of minutes that list the date and time of the meeting, the names of the OFS Investment Committee members present, and the names of observers.  Even when an agency establishes that it has properly withheld a document under a FOIA exemption, "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)."  *Roth v. U.S. Dep't of Justice*, No. 09-5428, 2011 WL 2535796, at *1 (D.C. Cir. June 28, 2011) (internal citations omitted).  Any nonexempt information that is reasonably segregable from the requested records must be disclosed.  *North v. U.S. Dep't of Justice*, No. 08-1439, 2011 WL 1193201, at *4 (D.D.C. Mar. 31, 2011) (citing *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996)).  To demonstrate that it has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 (D.D.C. 2010) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).  Conclusory language in agency declarations that does not provide a specific basis for segregability findings by a district court may be found inadequate.  *See Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999).

The defendant's *Vaughn* Index indicates that the minutes were withheld in full because "there is no meaningful, reasonably segregable portion of the document[s] that can be released." *Vaughn* Index at 4-5.  This explanation does not satisfy the defendant's burden of proving that

the headers at the top of each set of minutes that list the date and names of attendees are not reasonably segregable from the rest of the minutes.  Non-exempt information intertwined with exempt information does not need to be released when doing so would "produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words." *Brown v. U.S. Dep't of Justice*, 734 F. Supp. 2d 99, 111 (D.D.C. 2010) (quoting *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-221 (D.D.C. 2005).  Release of these headers would not create such indecipherable sentences; the headers are at the top of each page and are easily separable from the exempt portions of the minutes.  Accordingly, the defendant must release the portions of each set of meeting minutes that indicate the meetings' dates and attendees.

### c.  Defendant properly identified decision-making processes.

The plaintiff also challenges the withholding or redaction of several documents on the grounds that the defendant did not identify a specific decision-making process that would be harmed by the documents' release.  The plaintiff challenges the withholding or redaction of the following six documents on that basis: (1) the email strings regarding Treasury meeting with a minority bankers association, Bates numbers 296-297 and 466; (2) the email strings regarding timing for consideration of OneUnited's application, Bates numbers 475-477; (3) the email strings regarding press inquiries, Bates numbers 530-533; (4) page 821 of the "Memorandum summarizing background and supervisory information related to OneUnited," Bates numbers 819-821; (5) the FDIC Recommendation; and (6) the OCC Evaluation Form.

It is true that "[a]n agency cannot meet its statutory burden of justification by conclusory allegations of possible harm. It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA."  *Mead Data Cent., Inc. v. U.S. Dep't of the*

*Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977).  However, by identifying the role in the

deliberative process played by each of the documents mentioned above, the defendant has made

the proper showing required in order to claim the deliberative process privilege.  *See Judicial*

*Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d at 259 (requiring the agency to identify the role

of a contested document in a specific deliberative process to prove that disclosure would defeat

the purposes of FOIA).

The email attachment regarding presenting OneUnited's application to the OFS

Investment Committee, Bates numbers 275-276, consists of an internal analysis prepared by

Treasury staff to assist with presenting OneUnited's application to the OFS Investment

Committee.  *Vaughn* Index at 2.  The redacted portions contain opinions of Treasury staff of

possible considerations for Treasury decision-makers.  *Id.*  Similarly, the email strings regarding

timing for consideration of OneUnited's application, Bates numbers 475-477, consist of an email

string among Treasury staff.  *Id.* at 3.  The redacted portion discusses the timing for

consideration of OneUnited's CPP application.  *Id.*  The deliberative nature of both of these

documents is plain.  Releasing an internal, pre-decisional analysis would defeat the purpose of

the deliberative process privilege, which "rests on the obvious realization that officials will not

communicate candidly among themselves if each remark is a potential item of discovery and

front page news."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9

(2001).  Similarly, as the D.C. Circuit recognized in *Wolfe v. Dep't of Health and Human*

*Services*, information about the timing of the deliberative process is properly protected under the

deliberative process privilege.  839 F.2d at 775.

The defendant properly identified the harm that would result from the release of

unredacted versions of the email strings regarding presenting OneUnited's application to the

OFS Investment Committee, Bates numbers 275-276, and regarding timing for consideration of OneUnited's application, Bates numbers 475-477, by noting that release would "have a chilling effect on open and frank discussions and consultations between [the] Treasury and the entities it consults with."  *Vaughn* Index at 2, 3.  Following *in camera* review, the Court finds that these documents were properly redacted pursuant to the deliberative process privilege.[4]

The email string regarding responding to a press inquiry, Bates numbers 530-533, is an email string reflecting discussions among Treasury staff and between Treasury staff and the Treasury legal department.[5]  *Vaughn* Index at 3.  The emails discuss how to respond to a press inquiry regarding an anticipated news report concerning OneUnited as well as Treasury policy aimed at ensuring the CPP application process is free from political influence.   Samarias Decl. ¶ 34.  The *Vaughn* Index indicates that all reasonably segregable portions of the document have been released, including all portions of the document that relate directly to OneUnited.  *Vaughn* Index at 3.  The defendant contends that portions of the email were redacted pursuant to the deliberative process privilege.  Def.'s Mem. at 12.  Although these emails were exchanged in March 2009, well after the December 2008 decision to award CPP funding to OneUnited, *see Vaughn* Index at 3, the defendant argues they remain covered by the deliberative process privilege.

---

[4] The plaintiff claims that even if the emails discussing timing for the consideration of OneUnited's CPP application, Bates numbers 475-477, were properly withheld under the deliberative process privilege, the public's strong interest in obtaining information about how OneUnited was awarded TARP funds outweighs the defendant's weak interest in documents about the timing of deliberations.  Pl.'s Mem. at 13.  As discussed *supra*, however, the deliberative process privilege is not a qualified privilege that can be overcome by a strong showing of need in the FOIA context.

[5] The defendant asserts that all redactions to this document are appropriate under both deliberative process privilege and attorney-client privilege.  *See* Def.'s Reply at 13 n.7.  The assertion of attorney-client privilege with respect to this document is analyzed separately below.

Post-decisional documents properly fall under the deliberative process privilege when they recount or reflect pre-decisional deliberations.  *See Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 234 (D.D.C. 2009) (finding information that recounted "the ingredients of the decision-making process" properly withheld even though the interview in which the information was disclosed took place after decisions were made).  Additionally, to the extent that the emails discussed how to respond to press inquiries, internal communications regarding how to respond to press inquiries have been held to be protected under the deliberative process privilege.  In *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, the agency claimed the deliberative process privilege over email messages involving recommendations and evaluations for how to respond to Congressional and media inquiries regarding an earlier agency decision.  736 F. Supp. 2d 202, 208 (D.D.C. 2010).   The court held that the emails were generated as part of a continuous process of agency decision-making regarding how to respond to such inquiries and were thus protected by the deliberative process privilege. *Id.*  Like the documents at issue in that case, the email string regarding a press inquiry, Bates numbers 530-533, reflects internal deliberations as to how to respond to a press inquiry regarding the agency's earlier decision to award TARP funding to OneUnited.  As such, the emails were properly redacted pursuant to the deliberative process privilege.  *See also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (finding that deliberative process privilege covered email messages discussing the agency's response to news article).

The email strings regarding the Treasury meeting with a minority bankers association, Bates numbers 296-297 and 466, are communications among Treasury staff regarding the meeting with the bankers association (including representatives of OneUnited), and the *Vaughn*

Index indicates that all reasonably segregable portions of the email string have been released and that certain portions have been redacted. *Vaughn* Index at 2. The redacted portions summarize information the defendant received from the FDIC, OneUnited's primary federal regulator, regarding OneUnited. *Id.* The information was emailed within the Treasury Department to "assist decision makers' understanding of OneUnited's eligibility for TARP funding." *Id.* Revealing these internal, pre-decisional deliberations would undermine the purpose of the deliberative process privilege, which is to enhance "the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 9. The emails regarding the meeting with the minority bankers association were thus properly redacted pursuant to the deliberative process privilege.

The memorandum regarding summary information related to OneUnited, Bates numbers 815-817, was properly redacted and page 821 of the memorandum summarizing background and supervisory information related to OneUnited, Bates numbers 819-821, was properly withheld in its entirety. The memorandum regarding summary information on OneUnited, Bates numbers 815-817, is an "internal Treasury memorandum providing [a] Treasury staff member's opinion concerning confidential supervisory information regarding OneUnited...and related to [the] Treasury's deliberations regarding OneUnited's request for funding." Second Samarias Decl. ¶ 9. Similarly, the defendant explained in its *Vaughn* Index that the redacted portions of the memorandum summarizing background and supervisory information related to OneUnited, Bates numbers 819-821, contained "internal analysis of background and supervisor information [the] Treasury obtained regarding OneUnited." Suppl. *Vaughn* Index at 1. As discussed above, the defendant is only required to identify the deliberative process implicated by a document for it to

be properly withheld pursuant to the deliberative process privilege.  The defendant has done so

with respect to both memoranda, and so both are exempt under the deliberative process privilege.

　　　The defendant also properly identified the deliberative process that would be revealed if

the FDIC recommendation and OCC evaluation were not withheld.  The FDIC recommendation

was prepared by FDIC staff and "consists of staff evaluations, opinions, and recommendations"

as to whether OneUnited's application for the CPP program should be approved or denied.

*Vaughn* Index at 6.  The OCC evaluation contains "communications between representatives of

the [FDIC], the Board of Governors of the Federal Reserve System ('FRB'), the [OCC], and the

Office of Thrift Supervision ('OTS'), regarding the condition of OneUnited Bank, Boston,

Massachusetts, and a pre-decisional recommendation regarding that depository institution."

Vance Decl. ¶ 9.  Following *in camera* inspection, the Court is satisfied that both the FDIC

recommendation and the OCC evaluation represent inter-agency, pre-decisional communications

regarding OneUnited and its TARP funding application.  As such, they plainly fall within the

protection of the deliberative process privilege.

### ii.　Attorney-Client Privilege Covers Confidential Communications Between Agency Staff and the Agency Legal Department.

　　　In addition to deliberative process privilege, Exemption 5 also incorporates the attorney-

client privilege, which protects "confidential communications between an attorney and his client

relating to a legal matter for which the client has sought professional advice."  *Mead Data*, 566

F.2d at 252.  In the FOIA context, the agency is the "client" and the agency's lawyers are the

"attorneys" for the purposes of attorney-client privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105

(D.C. Cir. 1998) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C.

Cir. 1980)).  To satisfy its burden, the defendant "must show that the withheld document (1)

involves confidential communications between an attorney and his client and (2) relates to a

legal matter for which the client has sought professional advice." *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 16 (D.D.C. 2004) (citations omitted).

The only document the defendant contends is exempt under attorney-client privilege is the redacted email string regarding a press inquiry, Bates numbers 530-533, which is also exempt under the deliberative process privilege. *Vaughn* Index at 3.  The *Vaughn* Index indicates that the redacted portions of the email string "include attorney-client privileged communications between Treasury Staff and Treasury Legal, concern an internal discussion related to Treasury policy aimed at ensuring the CPP application process is free from political influence."[6]  *Id.*  The *Vaughn* Index further explains that the redactions contain "selected factual material intertwined with opinion" and reflect "confidential communications between Treasury staff and a senior attorney within Treasury's Office of General Counsel… regarding certain information provided to the Department by OneUnited."  *Id.* at 4.  The Samarias declaration provides additional information relevant to the defendant's assertion of privilege.  The declaration identifies the attorney whose advice was sought as Treasury's Assistant General Counsel for Banking and Finance and explains that, in the communication, Treasury staff sought legal advice "based upon facts provided confidentially by Treasury to its attorney" "regarding certain information provided to the [Treasury] by OneUnited."  Samarias Decl. ¶ 31.  The declaration also affirms that the communication between Treasury staff and the attorney was "made with the joint expectation of the attorney and Treasury staff that it would be held in confidence. . . and has been held in confidence."  *Id.*

---

[6] The defendant's initial submissions did not identify which parts of the email chain are covered by attorney-client privilege and which parts by deliberative process privilege, although the defendant's reply memorandum indicates that all redactions are made pursuant to both privileges.  *See* Def.'s Reply at 13 n.7.  Following *in camera* review, it appears to the Court that only certain of the redactions are covered by attorney-client privilege, but the issue is academic considering that the Court agrees that all redactions are proper under the deliberative process privilege.

The plaintiff disputes the application of attorney-client privilege because the *Vaughn* Index states that the legal discussion concerned information provided to the Treasury by OneUnited.  *See* Pl.'s Mem. at 14.  According to the plaintiff, this fact indicates that the defendant has failed to show that the information was held in confidence between the parties to the attorney-client communication and that information provided by OneUnited would not be "facts communicated in confidence by a client to an attorney for purposes of legal representation."  *Id.*  The fact that a request for legal advice concerned information originating with a third party does not necessarily defeat the claim of privilege, however.  The request for advice at issue here occurred in response to a press inquiry and took place in the context of an "internal discussion related to Treasury policy aimed at ensuring the CPP application process is free from political influence."  *Vaughn* Index at 3.  Such a request for legal advice concerns the agency's own actions and legal interests in connection with its handling of OneUnited, and "when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors, [Exemption 5] applies." *Cuban v. SEC*, 744 F. Supp. 2d 60, 78 (D.D.C. 2010) (quoting *Coastal States*, 617 F.2d at 863) (alteration in *Cuban*).

The email string at issue here differs from the type of document addressed in a line of cases in this Circuit that limit the applicability of attorney-client privilege for documents in which agency lawyers have provided legal advice about the application of regulations or statutes to the circumstances of third parties.  *See, e.g.*, *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997); *Schlefler v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983).  In *Tax Analysts*, the D.C. Circuit held that legal memoranda from the IRS Office of the Chief Counsel to field personnel

advising the field officers of how to proceed on the situation of specific taxpayers were not protected from FOIA disclosure under attorney-client privilege. *Tax Analysts*, 117 F.3d at 609, 619. The Court held that because the advice responded to requests and information transmitted by taxpayers to the IRS regarding the taxpayers' situations – and concerned no new or confidential information regarding the agency – the advice was not protected under attorney-client privilege. *Id.* at 619. The Court's ruling hinged on the fact that the function of the IRS legal memoranda at issue was to "create a body of private law, applied routinely as the government's legal position in its dealings with taxpayers." *Id.*

Similarly, in *Schlefler*, the D.C. Circuit held that attorney-client privilege did not preclude disclosure of similar memoranda from the Chief Counsel of the Maritime Administration to Maritime Administration officials where the memoranda provided legal opinions on how to rule on requests from third parties for loans, subsidies, or other similar matters in accordance with relevant statutes, regulations, and agency policies. *Schlefler*, 702 F.3d at 236, 245.

In *Tax Analysts* and *Schlefler*, agency staff had requested legal advice regarding how to apply relevant law in decisions that would affect the third party who provided the agency with information or other similarly situated third parties. The situation in this case is different. Here, the legal advice sought in the email string did not concern how to apply a "body of agency law" to OneUnited's CPP application in a manner analogous to *Tax Analysts* and *Schlefler*. Instead, the communication related to the agency's response to a press inquiry that was made after the decision to approve OneUnited's CPP application. As such, the agency here is plainly "dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank

communications with its counselors." *Cuban*, 744 F. Supp. 2d at 78. The agency staff sought legal advice "based upon facts provided confidentially by Treasury to its attorney" and the communication "has been held in confidence." Samarias Decl. ¶ 31. The portion of the email string regarding press inquiries, Bates numbers 530-533, that was redacted pursuant to attorney-client privilege was property redacted. This document is also subject in its entirety to the deliberative process privilege, as discussed *supra*.

### 2. Analysis of Exemption 4 claims

Exemption 4 exempts from agency disclosure "commercial or financial information [that is] obtained from a person and [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). The defendant contends that certain information in all but four of the disputed documents was withheld pursuant to Exemption 4.[7] The defendant asserts that Exemption 4 covers parts of documents prepared by the Treasury, the OCC, and the FDIC that reference "confidential business information prepared by or received from OneUnited." Def.'s Mem. at 20-21. OneUnited provided the Treasury, the OCC, and the FDIC with "financial information about the Bank's operations including cash flows, operating expenses, and employee incentive plans." Cooper Decl. ¶ 4. It is this information that the defendant asserts is properly covered by Exemption 4. Def.'s Mem. at 23.

In this Circuit, the terms "commercial" and "financial" are given their ordinary meanings. *See Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002); *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). "Commercial" is defined broadly to include "records that reveal basic commercial operations or relate to income-

---

[7] The defendant asserts that Exemption 4 applies to all documents except: Email attachment regarding presenting OneUnited's application to the OFS Investment Committee, Bates numbers 275-276; email strings regarding meeting with minority bankers association, Bates numbers 296-297 and 466; email strings regarding timing for consideration of OneUnited's CPP application, Bates numbers 475-477; and email strings regarding a press inquiry, Bates numbers 530-533. *See generally* Def.'s Mem.

producing aspects of a business" as well as situations where the "provider of the information has

a commercial interest in the information submitted to the agency." *Baker & Hostetler, LLP v.*

*U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006). Banks and other financial

institutions are considered "persons" for the purposes of the exemption. *See* 5. U.S.C. § 551(2)

("'person' includes an individual, partnership, corporation, association, or public or private

organization."). Commercial or financial information provided to the government is

"confidential" under Exemption 4 if the information is likely to "(1) impair the Government's

ability to obtain necessary information in the future; or (2) to cause substantial harm to the

competitive position of the person from whom the information was obtained." *National Parks*

*and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).[8] If either one of these

two prongs of the *National Parks* standard is satisfied, the information is deemed confidential

and may be properly withheld under Exemption 4.

The defendant argues that it has satisfied the first prong of *National Parks* because

"disclosure of the confidential information [obtained from OneUnited] would impair Treasury's

ability to obtain this type of information in the future." Def.'s Mem. at 23. The defendant

asserts that if confidential information pertaining to OneUnited were released, financial

institutions would be reluctant to share such information with Treasury in the future, which could

compromise the effectiveness of Treasury's TARP-based programs. *Id.* at 24.

---

[8] If the information at issue were provided to the government voluntarily, however, a different standard applies. In that case, the information is considered confidential if it is "of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass,* 975 F.2d at 879. For purposes of Exemption 4, information provided to the government because it is required for participation in a voluntary government program is treated as a mandatory, as opposed to a voluntary, submission of information. *See Lykes Bros. Steamship Co. v. Pena,* No. 92-2780, 1993 WL 786964, at *4, *8 n. 4 (D.D.C. Sept. 2, 1993) (finding submission can be mandatory if it is a "condition necessary to receiving approval of [an] application" made to the Government, or if submissions are required "to realize the benefits of a voluntary program..."). *See also Pub. Citizen Health Research Group v. FDA*, 964 F. Supp. 413, 414 n.1 (D.D.C.1997) (finding mandatory submissions necessary for obtaining approval for a drug from the Food and Drug Administration). The information turned over by OneUnited in the course of is application for CPP, a voluntary program, should be considered required and the ordinary *National Parks* standard must be applied.

The plaintiff has failed to address this component of the defendant's Exemption 4 argument at all.[9]  Accordingly, it is proper to treat this argument as conceded.  *See Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 110 (D.D.C. 2010) (treating the defendant's arguments as conceded under several FOIA exemptions because the plaintiff did not address the arguments in its opposition); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Thus, by satisfying the first prong of *National Parks*, the government has made the showing required to assert Exemption 4 over the relevant documents.

The government also argues that it has satisfied the second prong of *National Parks*, which provides an independent basis for sustaining its Exemption 4 withholdings.  The second prong of the *National Parks* standard requires the government to show that release of the information would harm the competitive position of the person from whom the information was obtained.  *Nat'l Parks*, 498 F.2d at 770.  The plaintiff argues that the defendant failed to show that release of the documents will lead to imminent competitive harm to OneUnited.  Pl.'s Mem. at  8-9; Pl.'s Suppl. Mem. at 8-9.  The defendant, however, is not required to prove imminent harm.  The agency only must show that release of the withheld documents "is *likely* to… cause substantial harm to the competitive position of the person from whom the information was obtained."  *Nat'l Parks*, 498 F.2d at 770 (emphasis added).  Through the declaration submitted by OneUnited, which the plaintiff fails to acknowledge in its opposition papers, the defendant has shown that release of confidential financial information concerning OneUnited would likely

---

[9] The plaintiff failed to address this argument both in its opposition to the initial motion for summary judgment and in its opposition to the supplemental motion for summary judgment.  *See* Pl.'s Mem. at 7-9; Pl.'s Suppl. Mem. at 7-9.

harm the bank's competitive position.  *See* Cooper Decl. ¶ 3.  In its application for CPP,

OneUnited disclosed, among other information, "financial information about the Bank's

operations including cash flows, operating expenses, and employee incentive plans."  *Id.* ¶ 4.

OneUnited asserts that disclosure of this information could "provide insight into the Bank's

operational advantages which might be used by rival banks to undermine those advantages and

ultimately OneUnited's fiscal integrity." *Id.* ¶ 6.  OneUnited has asserted that disclosure of this

information would "likely cause substantial harm." *Id*. ¶ 3.

    In any event, this Court does not need to decide whether the defendant satisfied the

second prong of the *National Parks* test for determining confidentiality, because, as discussed

*supra*, the plaintiff conceded the defendant's arguments that the withheld materials satisfy the

first prong.  *See* Pl.'s Mem. at 8-9; Pl.'s Suppl. Mem. at 8-9.  The *National Parks* standard

requires only that the government prove one of the two prongs.  Accordingly, the defendant has

made a sufficient showing to meet its burden under Exemption 4 and the Court treats the

defendant's claimed exemptions under Exemption 4 as conceded.

### 3.  Analysis of Exemption 8 claims

    Exemption 8 protects matters that are "contained in or related to examination, operating,

or condition reports prepared by, on behalf of, or for the use of an agency responsible for the

regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8).  This exemption's

primary purpose is to ensure the security of financial institutions.  *Consumers Union of U.S., Inc.*

*v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978).  Its secondary purpose is to safeguard the

relationships between the banks and their supervising agencies.  *Id.*  While FOIA exemptions are

normally construed narrowly, it is recognized in this Circuit that Exemption 8's scope is

"particularly broad."  *See Consumers Union*, 589 F.2d at 533 ("If the Congress has intentionally

33

and unambiguously crafted a particularly broad, all-inclusive definition, it is not our function,
even in the FOIA context, to subvert that effort.").

The defendant contends that portions of the emails regarding the meeting with the
minority bankers association, Bates numbers 296-297 and 466; all three sets of OFS Investment
Committee meeting minutes, Bates numbers 537-538, 539-540, and 541-542; the memorandum
regarding background information related to OneUnited, Bates numbers 815-817; the
memorandum regarding background and supervisory information related to OneUnited, Bates
numbers 819-821; the FDIC recommendation; and the OCC evaluation were redacted or
withheld pursuant to Exemption 8 because they contain information obtained from OneUnited's
federal regulator, the FDIC. *Vaughn* Index at 2, 4-6; Suppl. *Vaughn* Index at 1.  The plaintiff
argues that the defendant failed to prove the applicability of Exemption 8, which protects matters
that are "contained in or related to examination, operating, or condition reports prepared by, on
behalf of, or for the use of an agency responsible for the regulation or supervision of financial
institutions." 5 U.S.C. § 552(b)(8).   The plaintiff argues that Exemption 8 is inapplicable
because the defendant did not "relat[e] the redacted information from the disputed documents to
an actual report."  Pl.'s Mem. at 16.  Exemption 8 does not require the defendant to identify a
specific report to which the information relates, however.

In *McKinley v. FDIC*, the plaintiff challenged the Board of Governors of the Federal
Reserve System's ("the Fed") withholding of several documents pursuant to Exemption 8 when
the Fed did not identify specific reports to which the withheld documents related.  744 F. Supp.
2d 128, 143 (D.D.C. 2010).  The court found that because the Fed's bank supervisory process
was one of "continual interaction and information-sharing by regulated entities with their bank
supervisors," the defendant did not need to identify the specific report to which each piece of

redacted information related.  *Id.*  The court found that in light of Exemption 8's "breadth,"

affidavits that established the information was obtained through an ongoing supervisory process

were sufficient to make the withheld information "related to the examination, operating, or

condition reports prepared by, on behalf of, or for the use of an agency responsible for the

regulation or supervision of financial institutions."  *Id.* at 144.

In this case, the defendant's declarations similarly establish that the FDIC obtained the

information it relayed to the defendant through its monitoring of the condition of the financial

institutions it regulates.  Samarias Decl. ¶ 51; Second Samarias Decl. ¶¶ 18-19 ("This type of

information was obtained as part of the ongoing process by which the FDIC monitors the

financial condition and risk exposure of regulated financial institutions like OneUnited…).  As

such, like the withholdings in *McKinley*, the defendant's withholdings were properly made

pursuant to Exemption 8 even if no specific report was identified.  *See also McCullough v.*

*FDIC*, 1980 U.S. Dist. LEXIS 17685, at *7 (D.D.C. July 28, 1980) ("[T]he legislative history,

though limited, strongly implies that all records, regardless of the source, of a bank's financial

condition and operations and in the possession of a federal agency 'responsible for the regulation

or supervision of financial institutions,' are exempt.").

Exemption 8's secondary purpose – to secure the relationship between banks and their

supervising agencies – would also be harmed if the information OneUnited disclosed to its

regulator (the FDIC) were disclosed by the Treasury Department.  *See* Samarias Decl. ¶ 51;

Second Samarias Decl. ¶ 19 ("[T]he release of such confidential bank supervisory information to

competitors and the public at large would stifle candid evaluations of financial institutions, and

would harm the relationship between such institutions and their supervisory agencies.").

*In camera* review indicates that  the emails regarding the meeting with the minority

bankers association, Bates numbers 296-297 and 466; the portions of the three sets of OFS Investment Committee meeting minutes that summarize the meeting, Bates numbers 537-538, 539-540, and 541-542; the memorandum regarding background information related to OneUnited, Bates numbers 815-817; the memorandum regarding background and supervisory information related to OneUnited, Bates numbers 819-821, the FDIC recommendation, and the OCC evaluation all contain information obtained by the FDIC from OneUnited.  Accordingly, all were properly redacted or withheld pursuant to Exemption 8.

### 4.   Segregability

As discussed above, if a record contains both exempt and non-exempt material, all non-exempt material that is reasonably segregable must be released.  *See Roth*, 2011 WL 2535796, at *1.  Based on the Court's *in camera* review of the Disputed Documents, the Court concludes that the agency has produced all reasonably segregable responsive portions of all documents at issue, with the exception of the headers on all three sets of OFS Investment Committee meeting minutes, Bates numbers 537-538, 539-540, and 541-542.

## IV.   CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment is granted except as to Documents 9, 10, and 11, OFS Investment Committee meeting minutes, Bates numbers 5637-538, 539-540, and 541-542.  On or before July 22, 2011, the defendant shall produce to the plaintiff copies of Documents 9, 10, and 11 that do not redact the headers on these documents, or shall file a renewed motion explaining why the headers are not reasonably segregable from the minutes.  In all other respects, the defendant's motion is granted.

DATED: July 11, 2011                         /s/ *Beryl A. Howell*
                                              BERYL A. HOWELL
                                              United States District Judge